DAVID D. WHIPPLE (Utah State Bar No. 17347)
*PRO HAC VICE* APPLICATION PENDING
WhippleDa@sec.gov
AMY J. OLIVER (Utah State Bar No. 8785)
OliverA@sec.gov
Counsel for Plaintiff
U.S. Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, UT 84101-1950
Tel.: (801) 524-5796
Fax: (801) 524-3558

Local Counsel:
AMY JANE LONGO (Cal. Bar No. 198304)
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Email: LongoA@sec.gov
Phone: (323) 965-3835
Fax: (213)-443-1904

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**DALE SCOTT PEARLMAN, an individual;**<br><br>**Defendants.** | Case No.<br><br>**COMPLAINT** |

Plaintiff, Securities and Exchange Commission (the "Commission"), alleges as follows:

1

## SUMMARY OF THE ACTION

1. Dale Scott Pearlman ("Defendant") was engaged in soliciting investors to purchase the securities of microcap issuer Intertech Solutions, Inc. ("ITEC") owned by ITEC's undisclosed control person.

2. Without telling investors, Defendant coordinated trades between the seller of the shares and investors to enable the seller to offload his shares without significantly affecting the market for the thinly traded stock.

3. While he engaged in these solicitations, Defendant was neither registered with the Commission as a broker or dealer nor associated with a broker or dealer registered with the Commission.

4. Defendant earned transaction-based compensation for his solicitation activities of at least 10% of investment proceeds.

5. During the relevant period, ITEC met the statutory definition of a penny stock and had previously qualified as a shell company.

6. By engaging in this conduct, as further described herein, Defendant violated and, unless restrained and enjoined by this Court, may continue to violate Sections 5(a) and (c) and 17(a)(1) and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and (c), 77q(a)(1) and (3)], Sections 10(b) and 15(a)(1) of the Exchange Act [15 U.S.C. §§ 78j(b), 78o(a)(1)], and Exchange Act Rule 10b–5(a) and (c) [17 C.F.R. § 240.10b–5(a) and (c)].

## JURISDICTION AND VENUE

7. The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. § 77t(b) and (g)] and Sections 21(d) and (e) of the Exchange Act [15 U.S.C. § 78u(d) and (e)] to enjoin such acts, practices, and courses of business, and to obtain disgorgement, prejudgment interest, civil money penalties, and such other and further relief as this Court may deem just and appropriate.

8. Defendant was involved in the offer and sale of the common stock of a microcap company, which is a "security" as that term is defined under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

9. Defendant, directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce in connection with the conduct alleged in this Complaint.

10. This Court has subject matter jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa], and 28 U.S.C. § 1331.

11. Venue in this District is proper because Defendant is found, inhabits, and/or transacted business in the Central District of California and because one or more acts or transactions constituting the violations occurred in the Central District of California.

## DEFENDANT

12. **Dale Scott Pearlman**, born in 1954, is last known to reside in Orange County, California, and became involved in the solicitation of investors in ITEC securities sometime in 2014.

## FACTS

13. Sometime in early 2014, Defendant was introduced to W.M., the undisclosed control person of ITEC, by a mutual acquaintance.

14. Defendant had previously been associated with various registered broker-dealers and held securities licenses, and was thus familiar with the securities solicitation business.

15. Due to Defendant's experience as a securities solicitor, W.M. approached Defendant about assisting him in selling ITEC stock for which W.M. was the beneficial owner.

16. Defendant agreed to assist W.M. in selling his ITEC stock and thus engaged in a matched-trading scheme that generally operated as follows:

    a. W.M. obtained large blocks of ostensibly unrestricted shares of ITEC via private transactions and desired to profit quickly from them by selling the shares into the market.

    b. W.M. however, understood that selling large amounts of thinly traded microcap securities through standard brokerage sell orders would likely take a long time (if using limit orders) and/or cause a collapse in the price of the shares he sought to sell (if using market orders).

    c. To avoid this, W.M. hired solicitors, including Defendant, to solicit investors to purchase W.M.'s shares of ITEC.

    d. Defendant used purchased lead lists to cold call prospective investors and inquired if the investor had an active brokerage account with online order-entry functionality.

    e. If so, Defendant pitched the value of an investment in ITEC to the prospective investor.

    f. If the prospective investor was swayed and decided to purchase shares of ITEC, Defendant would enquire of the prospect how much money s/he wished to invest.

    g. Defendant would then contact W.M. or an agent of W.M. and inform him of the total dollar amount that the investor desired to invest.

    h. W.M. or his agent then checked the then current level II quotation for ITEC (which shows offers on the ask and bid) and provided Defendant with a limit order price at which the prospective investor was to enter his or her purchase order.

      i. Defendant then conveyed the determined limit order price to the prospective investor, who would enter a buy limit order for ITEC stock at the designated price.

      j. Simultaneously, W.M. or his agent entered a sell limit order for the same amount of shares at the same price. Through these means, the investor's buy order and W.M.'s sell order were likely to match, at least in part, with the effect that W.M. was able to liquidate his position piecemeal into a market with ready purchasers.

      k. W.M. or his agent and Defendant communicated about how many shares of the investor's order were "captured" (i.e., matched between the investor and W.M.), and W.M. paid Defendant a commission of at least 10% of the invested funds.

17. In addition to his role in W.M.'s matched-trading scheme, Defendant worked for a brief period in 2017 as a securities solicitor in a call center in California operated by D.W.

18. For his work as a securities solicitor, Defendant received gross commissions of at least $115,000.00 between 2015 and 2017.

## FIRST CLAIM FOR RELIEF

**Violations of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)]**

19. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–18, inclusive, as if they were fully set forth herein.

20. By engaging in the conduct described above, Defendant:

    a. engaged in the business of effecting transactions in securities for the account of others; and

    b. directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or

attempt to induce the purchase or sale of, securities without being registered as a broker or dealer with the Commission or associated with a broker or dealer registered with the Commission.

21. By reason of the foregoing, Defendant violated and, unless enjoined, will continue to violate Sections 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

## SECOND CLAIM FOR RELIEF

**Violations of Section 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (3)]**

22. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1-18, inclusive, as if they were fully set forth herein.

23. By engaging in the conduct described above, Defendant directly or indirectly, individually or in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce or by use of the mails has

    a. employed devices, schemes, or artifices to defraud; and

    b. engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit.

24. With respect to violations of Sections 17(a)(3) of the Securities Act, Defendant was at least negligent in his conduct.

25. With respect to violations of Section 17(a)(1) of the Securities Act, Defendant engaged in the above-referenced conduct knowingly or with sever recklessness.

26. By reason of the foregoing, Defendant violated and, unless enjoined, will continue to violate Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (3)].

## THIRD CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b–5(a) and (c) [17 C.F.R. § 240.10b–5(a) and (c)]**

27. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–18, inclusive, as if they were fully set forth herein.

28. By engaging in the conduct described above, Defendant, directly or indirectly, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce or by use of the mails has

   a. employed devices, schemes, and artifices to defraud; and

   b. engaged in acts, practices, and courses of business which operated as a fraud and deceit upon purchasers, prospective purchasers, and other persons.

29. Defendant engaged in the above-referenced conduct knowingly or with severe recklessness.

30. By reason of the foregoing, Defendant violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b–5(a) and (c) [17 C.F.R. § 240.10b–5(a) and (c)].

## FOURTH CLAIM FOR RELIEF

**Violations of Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. § 77e(a), 77e(c)]**

31. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–18, inclusive, as if they were fully set forth herein.

32. By engaging in the conduct described above, Defendant, directly or indirectly:

     a.    made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, as to which no registration statement was in effect, through the use or medium of any prospectus or otherwise;

     b.    carried or caused to be carried through the mails or in interstate commerce, by any means or instrument of transportation, securities, as to which no registration statement was in effect, for the purpose of sale or for delivery after sale; and,

     c.    made use of any means or instruments of transportation or communications in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise securities as to which no registration statement had been filed.

33. In regard to the sale of securities described herein, no exemption validly applied to the registration requirements described above.

34. By reason of the foregoing, Defendant violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. § 77e(a), 77e(c)].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

### I.

Permanently restraining and enjoining Defendant from, directly or indirectly, engaging in conduct in violation of Sections 5(a) and (c) and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), 77q(a)], Sections 10(b) and 15(a)(1) of the Exchange Act [15 U.S.C. §§ 78j(b), 78o(a)(1)], and Exchange Act Rule 10b–5 [17 C.F.R. § 240.10b–5];

II.

Permanently restraining and enjoining Defendant from directly or indirectly, including, but not limited to, through any entity owned or controlled any of them, soliciting any person or entity to purchase or sell any security;

III.

Ordering Defendant to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

IV.

Ordering Defendant to pay a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

V.

Retaining jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and,

VI.

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

Dated:  November 4, 2019

*/s/ Amy Jane Longo*
Amy Jane Longo
Attorneys for Plaintiff
Securities and Exchange Commission